UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA AND JULIAN ROGERS, | ) | CASE NO.  1:04CV2133 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | JUDGE ANN ALDRICH |
| | ) | |
| DIANE A. LILLY, | ) | |
| administratrix for the estate of | ) | |
| ROBERT C. LILLY, | ) | |
| | ) | |
| Defendant. | ) | MEMORANDUM OF OPINION |

Diane A. Lilly, defendant, is the administratrix for the estate of Robert C. Lilly, decedent.

On August 30, 2004, Lilly filed a wrongful death action against Barbara and Julian Rogers,

plaintiffs, in the Court of Common Pleas for Cuyahoga County, Ohio, Case No. CV 540345.

On October 22, 2004, the Rogers filed this federal action pursuant to 28 U.S.C. § 1333

and 46 U.S.C. App. § 183 *et seq.*, invoking this court's maritime jurisdiction.  They seek

exoneration from liability, or alternatively, limitation of liability pursuant to 46 U.S.C. App. §

183(a).  On November 17, 2004, this court enjoined Lilly from proceeding in the state court

action pursuant to 46 U.S.C. App. § 185.

On October 13, 2005, the Rogers filed a motion for summary judgment (Docket No. 27).

They seek summary judgment on the ground that there exists no evidence of negligence as a

matter of law, and therefore they are exonerated from all liability.  Alternatively, they assert that

their liability is limited to the value of their vessel pursuant to 46 U.S.C. App. § 183(a).

On December 13, 2005, Lilly responded and filed a combined motion to dismiss and

cross-motion for summary judgment (Docket No. 36).  Lilly has cross-moved for dismissal or

summary judgment on the ground that the federal complaint does not adequately dispute the negligence facts, and Julian Rogers is not entitled to limit his liability because he is not the vessel owner.

The parties have fully briefed the issues. For the following reasons, the Rogers' motion for summary judgment is granted, and Lilly's cross-motion to dismiss or for summary judgment is denied.

## I. FACTS

This case arises out of the drowning death of Robert C. Lilly when he fell into Lake Erie while at the Intercity Yacht Club ("IYC"). Plaintiff Barbara Rogers is the sole title owner of the vessel, Maggie Lou. Plaintiff Julian Rogers is her son who sometimes operated and maintained the vessel. (Complaint at ¶ 10; B. Rogers Dep. at 91.) The vessel was assigned to dock 38 along "A Dock" of the IYC, where the Rogers were club members. On September 1, 2002, the boat was backed up toward A Dock with a finger dock extending alongside the boat. (B. Rogers Dep. at 15-16, 19, 28-29 and Exs. 1, 2, and 6; Childs Dep. at 30-31.)

The IYC held its annual clam bake, which Barbara Rogers attended. Among her guests was her friend, Loretta Childs, who also was a friend of Robert Lilly, the decedent. Lilly arrived at the clam bake late, at around 8:00 p.m., after the actual dinner was over. Julian Rogers did not attend. (B. Rogers Dep. at 29-32, 38.)

The clam bake was held in the IYC clubhouse. Between approximately 8:45 and 9:00 p.m., Barbara Rogers brought some of her friends, including Childs and Lilly, to the Maggie Lou to show them the boat. Barbara left the boat to take a friend home at approximately 9:45 p.m.,

and Childs and Lilly remained on board by themselves.  (B. Rogers Dep. at 38-39, 42, 55-56, 60;

Childs Dep. at 24-28.)

At some point shortly thereafter, Lilly fell into the water and drowned.  The parties

dispute the precise location from where Lilly fell.  Specifically, the Rogers assert that he fell

while walking upon A Dock, while Lilly asserts that he fell from the boat while disembarking.

To exit and enter the boat, one had to step between the boat and the finger dock.  When

asked about the proximity of the boat to the finger dock, Childs testified at deposition as follows:

> Q.  [I]f you missed that step, was there enough room for you to fall into the water?
>
> A.  No.

(Childs Dep. at 34.)  Childs's recollection of Lilly's fall is as follows:

> Q.  Okay.  Could you tell me what led up to that [the fall] and how that occurred?
>
> A.  Okay.  Exactly.  We were exiting – we were getting ready – we were up at the front of the boat.  We were getting ready to leave the boat.  I kind of like turned away to the right, and I asked him – he kind of turned more towards going off the boat.  And at that time I asked him, well, would you like to have a soda or something, I said, because there was a little soda, you know, box to the right.  He said yes.  I looked over to the right to get him the soda.  I heard a splash.  That's all I heard.  I didn't even know he had gone off the boat.
>
> Q.  Okay.  Where on the boat is it your testimony that he fell off?
>
> A.  I – I don't know because I didn't see it.
>
> Q.  Okay.  Where was Mr. Lilly the last time you saw him?
>
> A.  He was like, I would say, towards the back of the boat.  Toward the back of the boat.
>
> Q.  Okay.
>
> A.  But it –

Q.    Okay.  Was he at the – at the area where people got on and off the boat the last time you saw him?

A.    He – well, he was – I would put it like this.  He was near – I would say he was near the area, but I had – I had – remember, I had turned away from looking at him to the right to get him – get a soda.

        *        *        *

Q.    As you sit here today, do you have any idea how Mr. Lilly fell into the water?

A.    I have no idea.

Q.    And do you have any idea where he fell into the water?

A.    I have no idea.

(Childs Dep. at 37-38, 81-82.)

After she heard the splash, Childs exited the boat, but she could not initially see Lilly.  She called for help, and several minutes later, she saw Lilly floating in the water near the back of the boat, between the boat and A Dock.  (Childs Dep. at 62-66.)

At the time of the incident, Ernest Shawver was in his own boat on the other side of A Dock, approximately three finger docks away.  (Shawver Dep. at 7-9, 12.)  He attempted to rescue Lilly after Lilly fell into the water.  At deposition, Shawver testified that he saw Lilly walking on A Dock just before he fell:

Q.    Was your attention directed to the Rogers boat at any time during the course of that evening?

A.    Only when the gentleman was on the dock walking and talking, you know, you just kind of look over, glance over, what have you.

Q.    The gentleman who you are speaking of?

A.    This is the gentleman I was trying to save and help.

-4-

Q.      You saw him on the dock?

A.      Uh-huh.

Q.      The answer is yes, for the court reporter?

A.      Yes.  Yes.

*       *       *

Q.      So was he on the finger dock or was he on Dock A when you saw him?

A.      When I saw him he was on Dock A.  He had already kind of walked, was headed towards going back to the party.

Q.      About how far away from the Rogers vessel was he when you saw him?

A.      This is her dock, he was just about turning this corner here.

Q.      Had he made the corner?

A.      Yes.  He had already made the corner.

*       *       *

Q.      So he was already on Dock A when you saw him?

A.      Uh-huh.

Q.      The answer is yes?

A.      Yes.

*       *       *

Q.      When you saw him in what direction was he faced?

A.      He was going towards the party, going back toward off the dock.

*       *       *

Q.      I want to get an idea about this glance when you saw him on the dock, that being Dock A, correct, and not the finger dock?  You're absolutely positive he was on Dock A and not the finger dock?

    A.    I'm 100 percent positive.

    Q.    100 percent positive?

    A.    100 percent positive.

(Shawver Dep. at 14-17, 61.)

    Shawver did not actually see Lilly fall into the water, but rather had turned away.

Shawver then heard a splash, followed by a woman screaming.  When he looked up again, Lilly

was no longer on the dock.  He ran out onto the dock and saw Lilly in the water in a panic.

(Shawver Dep. at 20-22.) As to Lilly's location in the water, Shawver testified as follows:

    A.    He [Lilly] was at the swim platform.

    Q.    Maggie Lou's swim platform?

    A.    Correct.

    Q.    Was he between the swim platform and Dock A?

    A.    Correct.

    *      *      *

    Q.    How much distance was there between the swim platform and Dock A?

    A.    Two feet.

    Q.    And that's the two feet that Mr. Lilly was occupying?

    A.    Yes.  Two feet of space.

(Shawver Dep. at 22, 34.)

    Shawver admitted that he was not specifically watching Lilly and never saw him fall into

the water.  Rather, Shawver heard chatter and had seen Lilly with a glance.  He then heard a

splash seconds later, and when he looked up, Lilly was no longer on A Dock. (Shawver Dep. at

-6-

49-50, 64-65.)  Shawver attempted to rescue Lilly, but to no avail.  Lilly was within arm's length of the swim platform, but in his panic, he never grabbed on.  (Shawver Dep. at 22-26.)

In summary, Childs testified at deposition that she has no idea from where Lilly fell. Shawver did not see him fall, but Shawver is positive that he saw the man he tried to rescue on A Dock just prior to hearing a splash, and saw him in the water between A Dock and the swim platform.  The clear conclusion from Shawver's testimony is that Lilly fell from A Dock, not the boat.

The Childs and Shawver depositions, however, differ from certain reports made by officers of the Ohio Department of Natural Resources ("ODNR"), who interviewed witnesses at the scene.  James Sapio of the ODNR typed an Investigative Action report which states that Childs told him that "when he [Lilly] was stepping off the boat, he slipped and fell into the water."  However, Sapio testified at deposition that he did not talk with Childs in any detail much beyond getting her name.  He then turned all his information over to James T. Gorman, an ODNR officer with  expertise in water craft matters.  (Sapio Dep. at 9-14, 31, 36, 41-42, Ex. 2.)

Gorman testified at deposition that he arrived at the scene at about 12:30 a.m. and was informed by park rangers that Lilly "had fallen off either the dock or the boat, they were unsure at that time."   He further testified: "We were never able to find out any indication if he fell from the boat, [or] the dock."  Gorman's testimony is consistent with Childs' that she did not see Lilly fall and had gone to get him something to drink prior to exiting the boat.  Gorman never spoke to Shawver.  (Gorman Dep. at 5-7.)  Gorman's records are ambiguous, sometimes referring to Lilly as falling off the boat, and other times the "dock or boat".  (Gorman Dep. Exs. 1 and 2.)  He also

stated that the boat was tied securely from both the bow and aft to the dock when he observed

the boat at the scene.  (Gorman Dep. at 13-15.)

Lilly relies on an affidavit and expert report of James Wilson, a maritime expert.  (See

Defendant's Brief in Opposition, Ex.1, Wilson, Aff.  The Wilson Report is Ex. B to the

affidavit.)  Wilson concluded that Lilly fell from the boat into the water at the

embarkation/disembarkation location.  He bases this conclusion on the official reports of the

ODNR and police.  (Wilson Report at 5.)  He further opines that the boat was moored improperly

and in a manner that could permit either the stern or bow to move further from the dock while

disembarking.  This improper mooring caused the accident.  (Wilson Report at 9.)

## II. LAW

### A. Summary Judgment Standard

Both parties seek summary judgment.  Summary judgment is appropriate "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The party moving for summary judgment bears the initial burden of production under

Rule 56.  The burden may be satisfied by presenting affirmative evidence that negates an

element of the non-movant's claim or by demonstrating "an absence of evidence to support the

non-moving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

If the movant meets this burden, the non-movant must "set forth the specific facts

showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The substantive law

identifies which specific facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).  To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 256 (citing Adickes v. Kress & Co., 398 U.S. 144, 158-59 (1970)).  However, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "[T]he mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion" for summary judgment. Anderson, 477 U.S. at 247-48.

B.  Standard For Dismissal

Lilly also has moved to dismiss because the complaint fails to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss, the allegations in the complaint are taken as true and viewed in the light most favorable to the plaintiff.  A complaint will not be dismissed "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hiser v. City of Bowling Green, 42 F.3d 382, 383 (6th Cir. 1994), cert. denied, 514 U.S. 1120 (1995), quoting, Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio, 900 F.2d 882, 885 (6th Cir. 1990). The complaint need only give fair notice as to the claim and the grounds upon which it rests.  In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993).

Conclusory allegations, however, are not sufficient to state a claim.  Rather, a complaint

must set forth specific facts which, if proved, would warrant the relief sought.  Sisk v. Levings, 868 F.2d 159, 161 (5th Cir. 1989).  In addition, a court is not bound to accept as true a legal conclusion couched as a factual allegation.  Papasan v. Allain, 478 U.S. 265, 286 106 S. Ct. 2932, 2944 (1986).  A court likewise need not accept unwarranted factual inferences.  Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987).

C.  Standards For Exoneration or Limitation of Liability

The Rogers bring this action pursuant to the Limitation of Liability Act, 46 U.S.C. App. § 183 *et seq.*

> The liability of the owner of any vessel, whether American or foreign, . . . for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

46 U.S.C. App. 183(a).  Pursuant to this statute, when a maritime loss occurs absent privity or knowledge of the vessel owner, liability of the owner is limited to the value of the owner's interest in the vessel and the vessel's pending freight.  In re: Estate of Charles Muer, 146 F.3d 410, 414 (6th Cir. 1998); In re: Cleveland Tankers, Inc., 67 F.3d 1200, 1203 (6th Cir. 1995); H&H Wheel Service, Inc. v. Cornet, 219 F.2d 904, 914 (6th Cir. 1955); Leco Corp. v. Grams, 1192 WL 158875 at *2, 968 F.2d 1215 (6th Cir. July 7, 1992) (table).

The determination of a limitation of liability claim is a two-step process.  First a court must determine what acts of negligence or conditions of unseaworthiness caused the accident. Muer, 146 F.3d at 415-16; In re: Complaint of Hercules Carriers, Inc., 768 F.2d 1558, 1563-64 (11th Cir. 1985); American Dredging Co. v. Lambert, 81 F.3d 127, 129 (11th Cir. 1996).  If there was no negligence, then the vessel owner is exonerated and the issue of limitation of liability is

-10-

of no consequence.  <u>Cleveland Tankers,</u> 67 F.3d at 1203; <u>In re: Petition of Atlass</u>, 350 F.2d 592, 593 (7th Cir. 1965).  Second, if negligence is demonstrated, the court must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness.  <u>Muer</u>, 146 F.3d at 415-16; <u>Hercules</u>, 768 F.2d at 1564.

Once a claimant has satisfied the initial burden of demonstrating negligence or unseaworthiness, the burden shifts to the shipowner to prove a lack of privity or knowledge.  <u>American</u>, 81 F.3d at 130; <u>Cleveland Tankers,</u> 67 F.3d at 1203; <u>In re: Petition of the M/VSunshine II</u>, 808 F.2d 762, 763 (11th Cir. 1987); <u>Hercules</u>, 768 F.2d at 1564.  As used in this context, "privity" or "knowledge" means a personal participation by the owner in some fault or act of negligence, or personal knowledge of matters likely to produce or contribute to the loss in the absence of adopting appropriate means of prevention.  <u>Sunshine II</u>, 808 F.2d at 763-64 (citations omitted).  Privity and knowledge turn on the facts of each particular case, <u>Cornet</u>, 219 F.2d at 914, and they are established when the means of obtaining the requisite knowledge existed, or a reasonable inspection would have led to the requisite knowledge.  <u>American</u>, 81 F.3d at 130; <u>Hercules</u>, 768 F.2d at 1564.


III.  <u>ANALYSIS</u>

At the outset, Lilly argues that the complaint fails to state a claim at least as to Julian Rogers because he was not the owner of the boat.  This issue would arise only if Lilly has met her initial burden of demonstrating negligence.  However, even assuming Lilly has met her initial burden, the complaint asserts sufficient facts to raise a triable issue as to whether Julian qualifies as an "owner" for the purpose of the applicable statute.

-11-

The protections of Section 183(a) are limited to the vessel's owner.  Leco Corp. v. Grams, 1192 WL 158875 at *2, 968 F.2d 1215 (6th Cir. July 7, 1992) (table).  The term "owner" is not defined in the statute, but it is an untechnical word that should be given a broad construction to achieve Congress' purpose in encouraging investment in American shipping.  Admiral Towing Co. v. Woolen, 290 F.2d 641, 645 (9th Cir. 1961); Leco, 1192 WL 158875 at *2; In re: Complaint of Nobles, 842 F. Supp. 1430, 1437 (N.D. Fla. 1993).  Legal title is not determinative.  Rather, the owner for the purposes of this statute is one who has the type of relationship to the vessel that could subject the person to liability.  Lecco, 1192 WL 158875 at *3; Nobles, 842 F. Supp. At 1437.  Factors in determining ownership include possession, dominion, or control over the vessel, as well as exercising responsibility for maintenance and operation.  Woolen, 290 F.2d at 645; Nobles, 842 F. Supp. At 1437.

The complaint asserts: "Plaintiff Barbara Rogers and Julian Rogers were responsible for the maintenance, care taking and piloting of the M/V Maggie Lou".  (Complaint at ¶ 10.)  Because Julian is alleged to have joint responsibility for the vessel's "maintenance, care taking and piloting," the complaint states a claim that he is an owner, as the term is applied under the Section 183(a).  In addition, Barbara Rogers testified at deposition that although she knows the proper means for mooring a boat, Julian primarily is responsible for maintaining the lines while the boat is docked.  (B. Rogers Dep. at 91.)  This also supports the allegation that Julian is an owner as that term is applied.  Because whether Julian is an owner is a justiciable issue, he is a proper party and the Court must proceed to the analysis of the merits.

The first step in the analysis of the applicable statute is to determine whether acts of negligence or unseaworthiness caused the harm.  If there was no negligence, then the Rogers are

exonerated fully.  The elements of negligence under admiralty law are essentially the same as common law: (1) a duty of care owed to the injured party; (2) breach of that duty; (3) the breach proximately caused the resulting injury; and (4) actual damages.  Ginop v. A 1984 Bayliner, 242 F.Supp. 2d 482, 485 (E.D. Mich. 2003).

The Rogers, as shipowners, owed a duty of care to their guests.  General principles of admiralty law require that an owner exercise reasonable care under the circumstances to those lawfully aboard the vessel.  Kermarec v. Compaigne Generale Transatlantique, 358 U.S. 625, 630, 632 (1959); Anderson v. Whittaker, 894 F.2d 804, 814 (6th Cir. 1990).  The Rogers do not dispute this duty of care.

As to the second negligence element, Lilly claims that the Rogers breached their duty of care.  Specifically, Lilly alleges that the boat was not moored properly, and that the Rogers permitted inexperienced persons to be alone on the boat without adequate safety instructions.  Unseaworthiness can result from improper maintenance of equipment and inadequate training of those on board.  In re: Complaint of Hercules Carriers, Inc., 768 F.2d 1558, 1566 (11th Cir. 1985).  At the very least, Lilly's expert report creates a justiciable issue as to whether the vessel was moored properly, and whether the Rogers provided adequate safety instructions.  Accordingly, this element cannot provide a basis for summary judgment to the Rogers.

Indeed, for the purposes of the current motions, the Rogers do not dwell on the specific allegations of duty and breach of duty.  Rather, the gravamen of their position is that the alleged negligence did not proximately cause Lilly's death, but he instead fell from A Dock when he was some distance from the vessel's embarkation point.  Thus the Rogers' motion is based on the third element, causation.

The acts of negligence or unseaworthiness must be the proximate cause or a contributory cause of the harm.  Hercules, 768 F.2d at 1566.  Causation can be proven by circumstantial evidence provided the evidence is sufficient to demonstrate probability, and not merely possibility.  Anderson v. Whittaker, 894 F.2d 804, 812 (6th Cir. 1990).

The primary witnesses who were in the area are Childs and Shawver.  As quoted above, Childs testified at deposition that she has no idea how or where Lilly fell into the water.  Her testimony, therefore, does not benefit either side.

Also as quoted above, Shawver testified at deposition that he saw "the gentleman I was trying save and help" on A Dock just before he heard the splash.  He testified that he was 100 percent positive that Lilly was on A Dock, and not on the finger dock or the boat.  He saw Lilly in the water between A Dock and the boat's swim platform, which is consistent with Lilly falling from A Dock, not the boat.  In addition, police photographs from that night do not show any space between the boat and the finger dock that would have permitted Lilly to fall into the water while disembarking.  In contrast, the space between A Dock and the swim platform is obvious. (See, e.g., B. Rogers Dep., Exs. 1,2, and 6.)  In addition, Lilly could not swim, not even, as Shawver testified, sufficient to reach his arm out within a two-foot space to grab the swim platform.  Diane Lilly offers no explanation based in evidence as to how Robert Lilly (the decedent) could have gotten behind the boat from where she alleges he fell.

In both her response and cross-motion, Lilly argues that the decedent fell from the boat, or at least there exists a genuine issue of material fact as to where he fell.  Lilly relies on the conclusion of her expert, James Wilson, that the decedent fell from the boat due to improper mooring.  However, the conclusion that he fell from the boat, the basis for the expert's

conclusion on causation, is taken from the official ODNR and police reports.  (Wilson Report at 5.)  All such reports stem from Officer Sapio's initial Investigation Action report in which there is a single sentence indicating that Childs told him that Lilly fell from the boat.

Sapio testified at deposition, however, that his conversation with Childs was brief and not much beyond getting her name. (Sapio Dep. At 9.)  That night, Sapio's duties with respect to the investigation ceased when he turned the investigation over to James Gorman.

At deposition, Childs repeatedly denied making any statement to investigators that Lilly fell from the boat because she did not see him. (Childs Dep. at 38-45.)  Wilson himself recognizes in his report that no one saw Lilly fall.  (Wison Report at 5.)  Gorman, the lead investigator, testified at deposition that he never could ascertain from where Lilly fell. Importantly, Gorman stated that Childs told him on the night of the accident that she did not see Lilly fall because she went to get him a soda, and Gorman never interviewed Shawver (Gorman Dep. at 5-7.)  In addition, despite Wilson's apparent certainty, the investigative reports likewise are inconclusive as to whether Lilly fell from the dock or boat. (Compare statements in Sapio Dep. Exs. 2, 3; Gorman Ex. 2.)

Upon review, the investigative reports, being second hand and inconclusive, are insufficient to create any justiciable issue on causation in light of the deposition testimony of Childs, Shawver, and Gorman.  Furthermore, because Wilson assumed from the investigative reports that Lilly fell from the boat, his causation analysis is fatally flawed.  Diane Lilly's negligence burden mandates that she present some affirmative evidence which raises a justiciable issue as to causation.  She has not done so because there is no actual evidence, whether direct or circumstantial, that the decedent fell from the boat.

-15-

The Rogers have filed an additional motion to strike the investigatory reports and Wilson's affidavit on the ground that their references to Childs's statements are hearsay (Docket No. 39).  Lilly has responded that Childs's statements are within the present-sense impression exception to the hearsay rule.  The Court need not reach the hearsay issue because, as concluded above, the content of such documents is insufficient to create a genuine issue of material fact on causation.  Accordingly, the Rogers' motion to strike is denied as moot.

Finally, Lilly argues that the complaint fails to state a claim because it lacks any specific allegation that the decedent fell from A Dock rather than from the boat.  The complaint, however, alleges that the death "was not caused by or due to any fault, neglect, or want of care on the part of the plaintiffs, or on the part of the vessel itself, but was due solely to the fault, neglect or want of care of decedent Robert C. Lilly."  (Complaint at ¶ 14.)  This claim clearly denies all fault of the Rogers, and instead asserts that the conduct of Robert Lilly was the full cause of his own death.  Accordingly, under notice pleading concepts, this statement is sufficient to encompass an assertion that Lilly fell from A Dock.

In summary, Lilly has not met her initial burden of raising a justiciable issue on all elements of negligence, and causation in particular.  The Rogers, therefore, are entitled to summary judgment that they are exonerated fully from liability.

## IV.  CONCLUSION

For the foregoing reasons, the Rogers' motion for summary judgment (Docket No. 27), is granted, and Lilly's combined motion to dismiss and cross-motion for summary judgment (Docket No. 36) is denied.  The Rogers' additional motion to strike (Docket No. 39) is denied as

moot.  Accordingly, this action is hereby dismissed with prejudice, each party to bear its own costs.

This judgment is final and appealable.

IT IS SO ORDERED.


Dated: November 17, 2006                          _____s/ Judge Ann Aldrich_____
                                                  ANN ALDRICH
                                                  UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA AND JULIAN ROGERS, | ) | CASE NO.  1:04CV2133 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | JUDGE ANN ALDRICH |
| | ) | |
| DIANE A. LILLY, | ) | |
| administratrix for the estate of | ) | |
| ROBERT C. LILLY, | ) | |
| | ) | |
| Defendant. | ) | <u>JUDGMENT ENTRY</u> |

Pursuant to the Memorandum of Opinion issued in the above-captioned case this date, plaintiffs Barabara and Julian Rogers' motion for summary judgment (Docket No. 27), is granted, and defendant Diane A. Lilly's combined motion to dismiss and cross-motion for summary judgment (Docket No. 36) is denied.  The Rogers' additional motion to strike (Docket No. 39) is denied as moot.  Accordingly, this action is hereby dismissed with prejudice, each party to bear its own costs.   This judgment is final and appealable.

IT IS SO ORDERED.

Dated: November 17, 2006      ____ s/ Judge Ann Aldrich_____
               UNITED STATES DISTRICT JUDGE